

# Missouri Court of Appeals

### Southern District

In Division

DICK PORTON, AMY PORTON, and )
NATHAN ATCHISON, )
)
    Respondents, ) No. SD37755
)
v. )
) **Filed:  June 26, 2024**
KEITH BOX and SARAH BOX, )
)
    Appellants. )

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Laura J. Johnson, Judge

### **AFFIRMED**

For nearly 30 years, the public has used a road ("the South Road") running through Keith and Sarah Box's property to access the Blue Ridge Estates Subdivision ("the Subdivision").[1]  Dick Porton, Amy Porton, and Nathan Atchison (collectively, "Subdivision Owners") own property in the Subdivision and use the South Road to access their properties.  In February 2020, the Boxes purchased the property on which the

---

[1] While the Subdivision is served by a platted public road, the platted road has not been maintained by Taney County for many years and is impassable and unsafe. Several residents of the Subdivision petitioned Taney County to maintain the platted road as a county road, but the petition was denied.  The Taney County Commission voted against any county-funded repairs on the platted road "because the steep grade exceeds county road standards and the repair costs are prohibitive." Due to the condition of the platted road, residents of the Subdivision and the public, including emergency services and delivery drivers, have accessed the Subdivision using the South Road.

South Road runs from an out-of-state owner who had owned the property since 1993. The out-of-state-owner described himself as an "absentee owner" who never visited the property and did not know the South Road was being used to access the Subdivision.[2] The out-of-state owner never gave anyone permission to use the South Road.  Despite never having permission, the public treated the South Road as a public road to access the Subdivision and it was regularly used by Subdivision residents, their guests, emergency personnel, law enforcement, and delivery drivers.[3]

About a month after purchasing the property, the Boxes blocked access to the South Road, and Subdivision Owners filed a petition against the Boxes seeking a public easement by prescription across the South Road and a declaration that the South Road was a public road by common-law dedication.[4]  Following a bench trial, the trial court found the South Road to be a public road by common-law dedication and, alternatively, that the elements for a public prescriptive easement had been met.  In its judgment, the trial court expressly found the out-of-state owner:

> never granted permission to anyone to drive or walk through the Box property.  During the twenty-seven years that [he] owned the Box property, he never walked it or even visited it.  He described himself as an "absentee owner".  He did not know that residents of the Subdivision were accessing the Subdivision through his property.  He was unaware that anyone was crossing his property.

[2] The out-of-state owner was a Florida limited partnership, of which Hugh Upton and his wife were general partners.  While the property was owned by the limited partnership rather than an individual, we use the pronoun "he" to describe the actions of the limited partnership because Hugh Upton is the individual who testified about the limited partnership's ownership of the property.

[3] Multiple witnesses testified at trial about the longstanding use and maintenance of the South Road.  For more than ten years the entire length of the South Road has been maintained by members of the public who have graded the road, filled pot holes and ruts, cut trees and limbs, removed brush from the road, and picked up trash.

[4] The School of the Ozarks, Fisher Enterprises, LLC, and Youngblood Family, LLC, were also named as defendants in the underlying case and each own property that the South Road also runs over or around, however, they filed no briefs in this appeal.  The Subdivision Owners also sought, alternatively, a private prescriptive easement for the use of the South Road, but that count is not relevant to the issues raised in this appeal.

The Boxes appeal from that judgment in three points.  First, they argue the trial court erred in declaring the South Road to be a public road by common-law dedication because neither the Boxes nor their predecessor-in-title acted in a way that unequivocally demonstrated an intent to dedicate the road to public use.  Second, as to the public prescriptive easement, the Boxes argue the trial court erred in shifting the burden to the Boxes to show use of the South Road was permissive.  Finally, the Boxes argue the trial court erred in finding there is both a common-law-dedicated road and a public prescriptive easement-because these theories are inconsistent.  Finding no merit in the Box's arguments, we affirm the judgment.

## Standard of Review

In a court-tried case, the judgment will be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." ***Singleton v. Singleton***, 659 S.W.3d 336, 341 (Mo. banc 2023) (quoting ***Empire Dist. Elec. Co. v. Scorse, as Tr. Under Trust Agmt. Dated Nov. 17, 1976***, 620 S.W.3d 216, 224 (Mo. banc 2021)).  We view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations.  ***Houston v. Crider***, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010).  In contrast, claims that the trial court erroneously declared or applied the law are reviewed *de novo*.  ***Singleton***, 659 S.W.3d at 341.  "Accordingly, '[d]eference is paid to the [trial] court's factual determinations, but this Court reviews *de novo* both the [trial] court's legal conclusions and its application of law to the facts.'"  ***Id.*** (quoting ***Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.***, 533 S.W.3d 720, 727 (Mo. banc 2017)).

3

We presume the trial court's judgment is valid, and the burden is on the Boxes to demonstrate its incorrectness. *McElvain v. Stokes*, 623 S.W.3d 769, 774 (Mo. App. W.D. 2021). Finally, we will affirm if the trial court's judgment is correct "under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Veazie-Gallant v. Brown*, 620 S.W.3d 641, 649 (Mo. App. E.D. 2021) (quoting *Venture Stores, Inc. v. Pacific Beach Co. Inc.*, 980 S.W.2d 176, 180 (Mo. App. W.D. 1998)).

## Analysis

"A public road may be established in three ways: (1) under section 228.190, RSMo; (2) by prescription; or (3) by implied or common law dedication." *Przybylski v. Barbosa*, 289 S.W.3d 641, 644 (Mo. App. W.D. 2009). In the present case, the Subdivision Owners sought the use of the South Road under two of those theories: a public prescriptive easement and common-law dedication. Under both theories, the remedy is the same—the *use* of the road. *Whittom v. Alexander-Richardson P'ship*, 851 S.W.2d 504, 507 (Mo. banc 1993) ("Common law dedication awards the public the *use* of the land in dispute[.]") (Emphasis added); *Ogg v. Mediacom, L.L.C.*, 142 S.W.3d 801, 810 (Mo. App. W.D. 2004) ("[T]he holder of a prescriptive easement has only the qualified and limited nonpossessory right to *use* the servient estate for a particular purpose[.]") (Emphasis added). The Boxes challenge the common-law road dedication theory in point 1, the prescriptive easement theory in point 2, and both theories in point 3. Because we will affirm a trial court's judgment if cognizable under any theory, we need not address all points if the trial court's judgment is cognizable under either the common-law road dedication theory or prescriptive easement theory since the remedy under both counts is the same—the use of the South Road. *See Jackson v. Higher Educ. Loan Auth. of Mo.*, 497 S.W.3d 283, 290-91 (Mo. App. E.D. 2016) ("[T]his court is permitted to affirm the trial court's judgment if it

4

is cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or insufficient.").

In point 2, the Boxes argue the trial court improperly shifted the burden to them to show the use was permissive because the burden only shifts to the landowner when the landowner *knew* of the use. This argument fails because the presumption that a use is adverse arises, even in the absence of the owner's actual knowledge, once a party seeking a prescriptive easement demonstrates open, continuous, *visible*, and uninterrupted use for ten years. ***Wertz-Black v. Guesa USA, LLC***, 524 S.W.3d 68, 72 (Mo. App. W.D. 2017).

The public can acquire a prescriptive easement for the use of a road over the land of another "when such road has been established . . . by adverse occupancy and use of the same by the public for a period of time equal to that prescribed by the statute of limitations[.]" ***Shapiro Bros., Inc. v. Jones-Festus Props., L.L.C.***, 205 S.W.3d 270, 274 (Mo. App. E.D. 2006) (quoting ***Terry v. City of Independence***, 388 S.W.2d 769, 774 (Mo. banc 1965)). The party claiming the prescriptive easement must show, by clear and convincing evidence, continuous, uninterrupted, visible, and adverse use of another's land for a period of ten years. ***Id.***

"Adverse" use does not require an intent to violate the owner's rights; rather, "it is necessary only for the use to proceed without recognition of the owner's authority to permit or prohibit the use." ***Lay v. Cunningham***, No. ED 111508, 2024 WL 1625272, at *3 (Mo. App. E.D. April 16, 2024) (quoting ***Southside Ventures, LLC v. La Crosse Lumber Co.***, 574 S.W.3d 771, 785 (Mo. App. W.D. 2019)). If permission is given by the landowner to use the land, the use of the land is not "adverse[.]" *See* ***Homan v. Hutchison***, 817 S.W.2d 944, 948 (Mo. App. W.D. 1991) ("[A] permissive use cannot ripen into a prescriptive use.").

5

When the party seeking a prescriptive easement demonstrates open, continuous, *visible* and uninterrupted use for ten years, the law presumes the use is adverse and under a claim of right. ***Phillips v. Sommerer***, 917 S.W.2d 636, 638 (Mo. App. W.D. 1996). "The presumption places the burden on the landowner to demonstrate that the use was permissive and not adverse."[5] ***Wertz-Black***, 524 S.W.3d at 74. No actual knowledge of the use is required, but *visibility* of the use is.[6] "Where the use is open 'so that any reasonable person would have discovered its existence,' the use is visible."[7] ***Smith v. Chamblin Props., LLC***, 201 S.W.3d 582, 587 (Mo. App. W.D. 2006) (quoting ***Tuf Flight Inds., Inc. v. Harris***, 129 S.W.3d 486, 490 (Mo. App. W.D.

---

[5] A presumption is not evidence; neither may it be weighed as evidence. Presumptions are not for consideration by the triers of the facts, but are procedural to effect a shifting to defendant of the burden of going forward with the evidence and disappear from the case upon the production of substantial evidence which controverts the fact presumed. On the other hand, "prima facie evidence" means such evidence which, in law, is sufficient to satisfy the burden of proof to support a verdict in favor of the party by whom it is introduced when not rebutted by other evidence. Prima facie evidence, however, is not conclusive evidence, and while it suffices to support a judgment upon a fact so established, it does not require or demand a verdict for the party whose contention it supports.

***State ex rel. State Dept. of Pub. Health & Welfare v. Ruble***, 461 S.W.2d 909, 913 (Mo. App. Spfld.D. 1970) (internal citations omitted).

[6] We are unaware of any Missouri case requiring proof of actual knowledge before this presumption applies. "[S]ince the method of acquiring prescriptive easements is analogous to that of establishing title by adverse possession[,]" some courts consider adverse possession cases in deciding prescriptive easement cases. *See* ***Glenville v. Strahl***, 516 S.W.2d 781, 782 (Mo. App. St.L.D. 1974). The requirement of visibility in a prescriptive-easement case is similar to the requirement that possession be "open and notorious" in adverse-possession claims. In the context of adverse possession, "it is well settled that 'the condition of open and notorious conduct does not require proof that the true owner have actual knowledge of the claim, only that the occupancy be conspicuous, widely recognized and commonly known.'" ***DeVore v. Vaughn***, 504 S.W.3d 176, 186 (Mo. App. W.D. 2016) (quoting ***Scott v. Rorebeck***, 766 S.W.2d 659, 654 (Mo. App. W.D. 1989)).

[7] There are good public policy reasons that explain why visibility rather than actual knowledge applies. It "discourage[s] landowners from sleeping on their rights and reward[s] the industrious use, development, and active monitoring of land." John A. Lovett, *Restating the Law of Prescriptive Easements*, 104 Marq. L. Rev. 939, 972 (2021). "An owner who 'pays so little attention to what he owns that he neither sells it nor intends to put it to a productive use' forfeits his right to preserve undiminished title to the person who does put the resource to productive use." *Id*. at 966 (quoting James Gordley, Foundations of Private Law 144 (2006)).

2004)).  "[T]hus, if the owner does not timely seek legal aid to dispossess one who 'enters into possession and sets up an adverse claim' to the land, 'the law assumes that the owner has acquiesced in the adverse claim.'"  *Wertz-Black*, 524 S.W.3d at 74 (quoting *Whittom*, 851 S.W.2d at 509).  "The application of the presumption of adversity is unaffected by any subjective misunderstanding by the landowner over the nature of the use."  J. Bruce, J. Ely, & E. Brading, The Law of Easements & Licenses in Land § 5:3 (2024).

Here, Subdivision Owners presented substantial evidence of open, continuous, *visible,* and uninterrupted use of the South Road by the public for not only ten years, but for almost 30 years.  For nearly three decades, residents, guests, emergency personnel, law enforcement, delivery drivers, and maintenance trucks have used the South Road to access the Subdivision.  Once the Subdivision Owners presented this evidence, the burden shifted to the Boxes to rebut the presumption of adversity by showing the use was permissive.  *See **Wertz-Black***, 524 S.W.3d at 74.  The Boxes failed to present any evidence that the use was permissive and, in fact, presented evidence that the use was not permissive.  The trial court properly applied the law when it placed the burden on the Boxes to demonstrate the public's use of the road was permissive.  Point 2 is denied.

Since the trial court's judgment is cognizable under the prescriptive easement theory, we need not and do not decide the Box's point-1 challenge to the trial court's ruling that a public road by common-law dedication had been established or their point-3 challenge that the trial court's rulings were based on inconsistent theories.

**Conclusion**

The trial court's judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J.W. BORTHWICK, J. – CONCURS

7